UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

Roger Lee Dingess,

                Petitioner,

vs.                             Case No.   5:10-cv-47-Oc-36DNF

Secretary, Florida Dept. of
Corrections, and Florida Attorney
General,

                Respondents.

_____

### OPINION AND ORDER

#### I. Status

Petitioner Roger Lee Dingess ("Petitioner" or "Dingess") is proceeding before the Court on his Amended Petition for Writ of Habeas Corpus (Doc. #8, Amended Petition) pursuant to 28 U.S.C. § 2254. The Amended Petition challenges Dingess' 2008 revocation of probation entered in Citrus County, Florida, for which he was sentenced to 12 years imprisonment. Petition at 1. Respondent filed a Response (Doc. #10, Response) to the Petition with supporting exhibits (Exhs. A-0). Dingess filed a Reply to the Response (Doc. #12, Reply). This matter is ripe for review.

#### II. Procedural and Factual History

On September 27, 2005, Petitioner was charged by Information in case number 2005-CF-1079 with the following: Count I, possession of methamphetamine; Count II, possession of a listed chemical; Count III, possession of cannabis over 20 grams; and, Count IV, possession of drug paraphernalia. Exh. A7-8. On February 1, 2007,

Petitioner executed a Waiver of Rights and Pleas Agreement, and entered pleas of no contest to each of the charges in exchange for a sentence of three years drug offender probation. Id., 23-26. The same day, the circuit court adjudicated Petitioner guilty and sentenced him in accordance with the plea agreement. Id., 27-32.

On May 30, 2007, Petitioner was arrested for trafficking in methamphetamine stemming from n uncover drug operation that took place in Marion County on May 15, 2007. Id., 33-34. On May 31, 2007, an Affidavit for Violation of Probation was filed against Petitioner for the new charge. Id., 37. On March 12, 2008, an Amended Violation of Probation Report was filed against Petitioner for violating condition 3 of his order of probation -- leaving his county of residence without permission on May 15, 2007. Id., 52-54. On March 14, 2008, Petitioner's violation of probation hearing took place. Exh. B. Defense counsel moved for a continuance, acknowledging that he failed to subpoena the confidential informant, Donald Cross, for the hearing. Id., 5. The State objected to the continuance due to the case previously being continued "several times," and the court denied the continuance. Id., 6.

The State then moved to file an amended violation to include the violation of condition 3 of the probation order, leaving the county without permission on May 15, 2007. Id., 11-14. The State argued that defense counsel was aware of the amendment several days

-2-

prior to the hearing, and defense counsel agreed that there was no surprise to the amendment but, nonetheless, objected to the amendment as untimely.  Id., 13-14. The trial court found any violation by the State inadvertent, not material, and not unduly prejudicial and permitted the amendment.  Id., 15.

At the hearing, Petitioner testified that he had been instructed by his probation officer that condition 5 of his probation prohibited him from committing any new law offenses, and condition 3 required him to obtain permission to leave Citrus County.  Id. 16-17.  Petitioner claimed that he had obtained permission to leave the county on May 15, 2007, either the day before or on that day, but he could not recall with whom he spoke to obtain permission.  Id. 18-19. Petitioner stated that he went to Marion County to either work or to see a doctor.  Id., 20.  On cross examination, Petitioner recalled that he went to Marion County on May 15, 2007 to take Donald Cross to the VA clinic.  Id. 24-25.

Brian Follett, a deputy with the Marion County Sheriff's Office, testified that, on May 15, 2007, he was assigned to a multi-agency drug enforcement team and was working an operation targeting methamphetamine dealers when he made contact with Petitioner.  Id., 27-28. A videotape of the transaction that occurred at the Steak and Shake in Marion County involving Petitioner was admitted into evidence.  Id., 29-31. The videotape

-3-

depicts Officer Follett handing Petitioner a cigarette case that contained $2500 in cash, and Petitioner handing Follett back a different cigarette pack in return. Id. 32-33. The parties stipulated that the substance in the cigarette pack handed to Officer Follett was methamphetamine. Id., 34. Officer Follett testified that Donald Cross was a confidential informant who indicated he knew someone who would sell methamphetamine to an undercover officer. Id., 36. Donald Cross was the passenger in the vehicle at the time the drug transaction took place. Id., 37. Petitioner testified that he did not know what was in the cigarette pack when he handed it to Follett. Id., 68. Petitioner claimed that Donald Cross placed the cigarette pack on his lap and told him to give it to Follett. Id., 69.

Petitioner's probation officer, Guy Prevatt, testified that Petitioner never obtained permission to leave Citrus County on May 15, 2007. Id., 49. There was no notations in the file that he had obtained permission from anyone to leave on that date. Id. It was common practice to make notations in the file if permission was granted. Id.

The defense presented David Farr, a former neighbor of Donald Cross, as a witness. Id., 55. He was Donald Cross' next door neighbor until March 2007. Mr. Farr testified that Donald Cross gave him a ride in November of 2006 and he was subsequently arrested for a drug transaction which took place in Donald Cross'

-4-

vehicle at the Steak and Shake. Id., 56-58. Mr. Farr knew that Donald Cross was manufacturing methamphetamine on his property. Id., 58. Mr. Farr claimed he did not have any knowledge of the methamphetamine in Donald Cross' car, but agreed to plea guilty to the possession charge. Id., 62.

The trial court believed the testimony of the probation officer over Petitioner's testimony as to whether Petitioner was given permission to be out of the county. Id., 76. The court found that Petitioner had exclusive possession of the cigarette packs; and, therefore he knew what was in the cigarette pack. Id., 77-78. The court revoked Petitioner's probation and sentenced him to 5 years on counts I and III, and 12 years on count II, all to be served concurrently. Id., 83; Exh. A, 45-47, 56-67. On April 3, 2009, Petitioner's judgment of conviction and sentence were affirmed on direct appeal. Exh. F; Dingess v. State, 8 So. 3d 444 (Fla. 5th DCA 2009).

### III. Applicable § 2254 Law

#### A. Deferential Review Required By AEDPA

Dingess filed his timely Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Consequently, post-AEDPA law governs this action. Abdul-Kabir v. Quarterman, 127 S. Ct. 1654, 1664 (2007); Penry v. Johnson, 532 U.S. 782, 792 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n.9

(11th Cir. 2007). Under the deferential review standard, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Cullen v. Pinholster, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011). "This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that the state-court decisions be given the benefit of the doubt." Id. (internal quotations and citations omitted). See also Harrington v. Richter, ___ U.S. ___, 131 S. Ct. 770, 786 (2011) (pointing out that "if [§ 2254(d)'s] standard is difficult to meet, that is because it was meant to be.").

Both the Eleventh Circuit and the Supreme Court broadly interpret what is meant by an "adjudication on the merits." Childers v. Floyd, 642 F.3d 953, 967-68 (11th Cir. 2011). Thus, a state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits that warrants deference by a federal court. Id.; see also Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008). Indeed, "unless the state court clearly states that its decision was based solely on a state procedural rule [the Court] will presume that the state court has rendered an adjudication on the merits when the

-6-

petitioner's claim 'is the same claim rejected' by the court." Childers v. Floyd, 642 F.3d at 969 (quoting Early v. Packer, 537 U.S. 3, 8 (2002)).

"A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme] Court." Thaler v. Haynes, ___ U.S. ___, 130 S. Ct. 1171, 1173 (2010); see also Carey v. Musladin, 549 U.S. 70, 74 (2006)(citing Williams v. Taylor, 529 U.S. 362, 412 (2000))(recognizing "[c]learly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision). "A state court decision involves an unreasonable application of federal law when it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case, or when it unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Ponticelli v. Sec'y, Fla. Dep't of Corr., 690 F.3d 1271, 1291 (11th Cir. 2012)(internal quotations and citations omitted). The "unreasonable application" inquiry requires the Court to conduct the two-step analysis set forth in Harrington v. Richter, 131 S. Ct. 770. First, the Court determines what arguments or theories support the state court decision; and second, the Court must determine whether "fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior"

Supreme Court decision. Id. (citations omitted). Whether a court errs in determining facts "is even more deferential than under a clearly erroneous standard of review." Stephens v. Hall, 407 F.3d 1195, 1201 (11th Cir. 2005). The Court presumes the findings of fact to be correct, and petitioner bears the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Supreme Court has held that review "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 131 S. Ct. at 1398. Thus, the Court is limited to reviewing only the record that was before the state court at the time it rendered its order. Id.

B. Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d). Newland v. Hall, 527 F.3d 1162, 1183 (11th Cir. 2008). Post-AEDPA, the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case. Newland, 527 F.3d at 1184. In Strickland, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made

-8-

errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688; see also Bobby Van Hook, 558 U.S. ___, 130 S. Ct. 13, 16 (2009); Cullen v. Pinholster, 131 S.Ct. at 1403 (2011).

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." Bobby Van Hook, 130 S. Ct. at 17 (internal quotations and citations omitted). It is petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006), cert. denied sub nom. Jones v. Allen, 127 S. Ct. 619 (2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny. Id. A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable

professional assistance." <u>Strickland</u>, 466 U.S. at 689. An attorney is not ineffective for failing to raise or preserve a meritless issue. <u>Ladd v. Jones</u>, 864 F.2d 108, 109-10 (11th Cir.), <u>cert. denied</u> <u>sub nom.</u> <u>Ladd v. Burton</u>, 493 U.S. 842 (1989); <u>United States v. Winfield</u>, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting <u>Burger v. Kemp</u>, 483 U.S. 776, 794 (1987)).

## IV. Findings of Fact and Conclusions of Law

This Court has carefully reviewed the record and, for the reasons set forth below, concludes no evidentiary proceedings are required in this Court. <u>Schriro v. Landrigan</u>, 550 U.S. 465, 127 S. Ct. 1933, 1939-40 (2007). Petitioner does not proffer any evidence that would require an evidentiary hearing, <u>Chandler v. McDonough</u>, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court. <u>Schriro</u>, 127 S. Ct. at 1940; <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert. denied</u>, 541 U.S. 1034 (2004).

The Petition identifies three grounds of ineffective assistance of counsel: 1) failure to interview and call witness Donald Cross, 2) failure to interview and call witness Maria Pearce and, 3) failure to move for a continuance to investigate the amended violation of probation filed on the day of the hearing. See generally Id. Respondent acknowledges that the Amended Petition is timely and concedes that Petitioner exhausted each of the grounds alleging ineffective assistance of counsel upon which he seeks relief. Response at 8-10. Nonetheless, Respondent contends that Petitioner fails to satisfy his burden under 28 U.S.C. § 2254(d) and (e). See generally Id.

In Grounds (1) and (2), Petitioner faults trial counsel for failing to interview and call witnesses Donald Cross and Maria Pearce. Amended Petition at 9, 15. Petitioner claims Donald Cross would have testified that Petitioner obtained permission to leave Citrus County and that Petitioner had no knowledge of the contents of the cigarette packs. Petitioner claims Maria Pearce would have testified that she herself contacted probation and obtained permission for Petitioner to leave Citrus County. In Ground (3), Petitioner claims that defense counsel was ineffective for failing to move for a continuance in order to investigate Petitioner's defense to the amended violation. Id. at 19

Petitioner raised all three Grounds in his Rule 3.850 motion. Exh. J. The post conviction court summarily denied all grounds for relief. Exh. K. In denying Petitioner relief, the court held:

Defendant alleges that trial counsel was ineffective for failing to call Donald Cross and Maria Pearce to testify at his violation of probation hearing. Defendant also alleges that trial counsel was ineffective for failing to move for a continuance in order to investigate a defense to the amended violation of probation report. As noted above, the Fifth District Court of Appeal *per curiam* affirmed this Court, holding that Defendant willfully and substantially violated conditions of his probation, that it was incumbent upon this Court to weigh the credibility of testimony, and finding no abuse of this Court's discretion in denying the motion for continuance. When there is no reasonable probability, as in the instant case, that the outcome of the hearing would have been different if counsel had taken or not taken a particular action, a defendant is unable to establish prejudice. A court need not make a specific ruling on the performance component of the test in Strickland when it is clear that the prejudice component is not satisfied.

Exh. K, ¶6. The Fifth Circuit Court of Appeals *per curiam* affirmed the post conviction court's ruling. Exh. O; Dingess v. State, 23 So. 3d 1194 (Fla. 5th DCA 2009).

In the instant Petition, Petitioner acknowledges that the trial court disposed of his Rule 3.850 motion on the prejudice prong of Strickland. Petition at 7. Petitioner generally asserts that the "trial court erred in applying an irrelevant prejudice examination" regarding each of the instances of counsel's alleged ineffectiveness.   Id. at 9, 15, 19.   Essentially, Petitioner submits that the trial court's failure to conduct an evidentiary hearing deprived him of the opportunity to demonstrate that had counsel called Cross and Pearce and requested a continuance that the outcome of the hearing would have been different.   Id.   More specifically, Petitioner points out that, in addition to hearing and being able to weigh the testimony of Cross and Pearce, if a

-12-

continuance had been granted the trial court would have learned that the new trafficking charge against Petitioner stemming from the transaction in Martin County were *nolle prossed*. Id. Consequently, Petitioner argues that had the trial court conducted an evidentiary hearing and heard Cross and Pearce's testimony and the fact that his Marion County charges were *nolle prossed*, the trial court would have concluded that Petitioner did not willfully and substantially violate the conditions of his probation and found prejudice. Id. at 8.

At the outset, the Court finds that Petitioner's contention that the state court's failure to grant him an evidentiary hearing in connection with his Rule 3.850 claims prevented him from demonstrating prejudice fails to state a viable habeas claim. In particular, Petitioner is asserting error in the collateral proceeding. However, errors in a state collateral proceeding "is an attack on a proceeding collateral to the detention and not the detention itself." Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir. 1995); Quince v. Crosby, 360 F.3d 1259, 1261 (11th Cir. 2004); Anderson v. Sec'y, Dep't of Corr., 462 F.3d 1319, 1330 (11th Cir. 2006). Consequently, "it is beyond debate that a state court's failure to conduct an evidentiary hearing on a post conviction motion does not constitute a cognizable claim for habeas relief." Carroll v. Sec'y, Dep't of Corr., 574 F.3d 1354, 1365 (11th Cir. 2009)(internal quotations and citations omitted). Consequently, the Court rejects Petitioner's request for habeas relief to the

-13-

extent it rests upon the state court's failure to provide him an evidentiary hearing.

Upon review of the post conviction court's order denying Petitioner relief on his three claims alleging ineffective assistance of trial counsel, the post conviction court properly cited to Strickland as the appropriate governing standard. Additionally, the post conviction court decision not to address the deficiency prong of the Strickland test because it rejected Petitioner's claims under the prejudice prong is also consistent with federal law. Pope v. Sec'y, Dep't of Corr., 680 F.3d 1271, 1284 (11th Cir. 2012); Windorn v. Sec'y, Dep't of Corr., 578 F.3d 1227, 1248 (11th Cir. 2009)(per curiam). Thus, Petitioner cannot show that the State court's decision resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law.

Further, Petitioner does not dispute the State court's factual findings, nor has he presented clear and convincing evidence rebutting them. With regard to Petitioner's claim that counsel was ineffective in failing to secure the testimony of Cross, the confidential informant, Petitioner states that Cross would have testified that Petitioner obtained permission to leave the county and that Petitioner did not have any knowledge of what was in the cigarette pack that he handed to undercover officers. Amended Petition at 11. Petitioner suggests that testimony by Cross would support his theory that "Cross masterminded any drug transaction

-14-

Case 5:10-cv-00047-GKS-PRL Document 18 Filed 11/07/12 Page 15 of 19 PageID 137

and used the Petitioner as an unwitting victim to abuse his position as a confidential informant to illegally profiteer." Id. at 12. At the outset, the Court notes that "[c]omplaints of uncalled witnesses are not favored, . . . because the allegations of what a witness would have testified are largely speculative." Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978).[1] Here, Petitioner claims that Cross, the government's confidential informant, would have incriminated himself and testified that he solely was responsible for the sale of the methamphetamine transaction, and that he was committing a ruse on the undercover drug agents. The Court finds the suggestion that Cross would have incriminated himself in such a manner incredulous. Additionally, it ignores the fact that a videotape of the transaction was introduced into evidence. The trial court found as a matter of fact that the video was "very definitive, a very well done undercover video" that depicted "the person of Roger Dingess assist in the transaction of this narcotic situation." Exh. B at 76. The trial court further found that Petitioner had "exclusive possession" of the cigarette pack. Id. at 77. Relying upon Florida Standard Jury Instruction 25.2,[2] the trial court determined

---

[1]Unless later superceded by Eleventh Circuit precedent, a Fifth Circuit decision issued prior to the close of business on September 30, 1981, binds this court. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981)(en banc).

[2]The issue of whether Petitioner subjectively knew what was in the cigarette pack was argued by the parties. Florida Standard Jury Instruction 25.2, which was quoted by the trial court states, (continued...)

-15-

that "by the greater weight" Petitioner knew what was in the contents of the cigarette pack that he handed to undercover officers. Id.

With regard to Petitioner leaving the county without obtaining permission, the state court, in finding a willful and substantial violation, credited the testimony of the probation officer who testified that he did not give Petitioner permission and there was nothing in the file to indicate that Petitioner had been given permission to leave the county. Petitioner now states that Ms. Pearce "assisted him with scheduling appointments, corresponding with doctors and medication, and also with probation." Amended Petition at 15. According to Petitioner, Ms. Pearce would have testified that "she herself contacted probation and obtained permission for the Petitioner to leave Citrus County." Id. at 16. At the probation hearing, Petitioner never identified Ms. Pearce as the person who obtained permission for him to leave the county. Indeed, Petitioner testified that he, himself, made the calls to probation. See Exh. B at 19 (stating "I always call the day before and get permission. That's the way I always did it."). During the violation of probation hearing, the trial court expressly stated that "by the greater weight and preponderance of the evidence, I simply believe the probation officer over your client." Exh. B at 76. Petitioner fails to demonstrate how the testimony of Ms.

---

²(...continued)
"If a person has exclusive possession of a thing, knowledge of its presence may be inferred or assumed." Exh. B at 77.

Pearce, which contradicts Petitioner's own testimony, would have been deemed more reliable to the court than that of the probation officer's testimony.

Finally, Petitioner claims that counsel's failure to move for a continuance based upon the State's late amendment of the violation to include the charge that Petitioner left the county without obtaining permission, prejudiced him. Amended Petition at 19. The record conclusively refutes Petitioner's allegation of counsel's ineffectiveness. When the State moved to amend the violation, defense counsel did object to the late amendment. Exh. B at 14. Significantly, defense counsel stated " . . . so, I'm making the objection that the amendment is untimely." Id. The trial court on its "own initiative" finding the amendment "not necessarily evidence, it's more like a charging document, so it's kind of a hybrid," conducted a Richardson[3] analysis and permitted the amendment finding that the violation was "inadvertent" and "not material, not unduly prejudicial to the defendant . . . ." Id. at 14-15.

Consequently, based upon the record and affording deference to the State court, the Court finds that the State courts' denial of Ground (1), (2) and (3) was not based upon an unreasonable

---

[3]Richardson v. State, 246 So. 2d 771 (Fla. 1971). In Richardson, the Florida Supreme Court held that where the prosecutor violates discovery rules, a trial court should conduct a hearing to determine the fairness and prejudice to the accused of allowing the use of the undisclosed evidence at trial.

determination of the facts, or contrary to or an unreasonable application of Strickland. Thus, the Court denies Petitioner's Amended Petition.

THEREFORE, it is now

**ORDERED AND ADJUDGED:**

1. Petitioner's Amended Petition for Writ of Habeas Corpus (Doc. #8) is **DENIED** for the reasons set forth herein.

2. The **Clerk of the Court** shall enter judgment accordingly; terminate any pending motions; and close this file.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003)

(quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n. 4 (1983)).
Petitioner has not made the requisite showing in these
circumstances.

Finally, because Petitioner is not entitled to a certificate
of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Orlando, Florida, on this ____7____ day of
November, 2012.

G. KENDALL SHARP
SENIOR UNITED STATES DISTRICT JUDGE

SA: hmk
Copies: All Parties of Record